IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES BLOUNT, individually and on behalf of the class defined herein, | ) ) ) |
| Plaintiff, | ) Case No. 08CV2331 ) ) Hon. John W. Darrah ) |
| v. | ) ) Magistrate Judge Arlander Keys ) |
| MIDLAND CREDIT MANAGEMENT, INC.; MIDLAND FUNDING NCC -2 CORPORATION; and ENCORE CAPITAL GROUP, INC., | ) ) ) ) ) |
| Defendants. | ) ) ) |

**DEFENDANTS MIDLAND CREDIT MANAGEMENT, INC., MIDLAND FUNDING NCC-2 CORPORATION, AND ENCORE CAPITAL GROUP, INC.'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT**

Defendants, Midland Credit Management, Inc. ("MCM"), Midland Funding NCC -2 Corporation ("NCC "), and Encore Capital Group, Inc.("Encore") (also collectively referred to as "Defendants"), by and through their undersigned counsel, for their Answer and Affirmative Defenses to Plaintiff's Complaint, state as follows:

**INTRODUCTION**

1. Plaintiff James Blount brings this action to secure redress from unlawful credit and collection practices engaged in by defendants. Plaintiff alleges violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1629 et seq. ("FDCPA").

**RESPONSE:** **Defendants admit that Plaintiff James Blount ("Plaintiff") has made allegations in his Complaint (the "Complaint") relating to the FDCPA, but deny any and all liability to Plaintiff. In addition, Defendants NCC and Encore deny that they are debt collectors, or that they engaged in any debt collection activity with respect to the Plaintiff.**

2. The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading

statements, in connection with the collection of a debt; it also requires debt collectors to give debtors certain information. 15 U.S.C. §§ 1692d, 1692e, 1692f and 1692g.

**RESPONSE: Defendants admit that Plaintiff has made allegations in his Complaint relating to the FDCPA, but deny any and all liability to Plaintiff. In addition, Defendants NCC and Encore deny that they are debt collectors, or that they engaged in any debt collection activity with respect to Plaintiff.**

3. Specifically, plaintiff alleges that defendants systematically engaged in filing and threatening lawsuits on time-barred which they purchase for a few cents on the dollar.

**RESPONSE: Denied.**

## VENUE AND JURISDICTION

4. This Court has jurisdiction under 15 U.S.C. § 1692k (FDCPA), 28 U.S.C. § 1331, and 28 U.S.C. § 1337.

**RESPONSE: Defendants admit only that this Court has jurisdiction over the allegations in Plaintiff's Complaint and otherwise state that the jurisdictional statutes cited speak for themselves.**

5. Venue and personal jurisdiction in this District are proper because:

    a. Defendants' collection communications and activities impacted plaintiff within this District;

    b. Each defendant does business or is located within this District.

**RESPONSE: Denied as stated. Further answering, Defendants NCC and Encore deny that they are debt collectors, or that they engaged in any debt collection activity with respect to Plaintiff.**

## PARTIES

### Plaintiff

6. Plaintiff James Blount resides in the Northern District of Illinois.

**RESPONSE**:  Defendants lack information or knowledge sufficient to form a belief as to the truth of this allegation.

### Midland Funding NCC-2 Corporation

7.     Defendant Midland Funding NCC-2 Corporation ("NCC") is a Delaware corporation.  It's principal place of business is 8875 Aero Drive, Suite 200, San Diego, CA 92123.  Its address for service of process is Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, DE 19808.

**RESPONSE**:  Admitted.

8.     Defendant NCC is in the business of taking title to charged-off debts allegedly owed by consumers, including large amounts of credit card debts, for a small fraction of face value and enforcing the debts against the consumers.

**RESPONSE**:  Defendants admit that NCC is in the business of purchasing and taking title to charged-off debts, but deny the remaining allegations contained in paragraph 8.

9.     Defendant NCC has been the plaintiff in more than 1,000 collection actions against Illinois residents.

**RESPONSE**:  Defendants lack information or knowledge sufficient to form a belief as to the truth of these allegations.

10.    Defendant NCC is a "debt collector" as defined in the FDCPA.

**RESPONSE**:  Denied.

11.    Defendant NCC transacts business in Illinois.

**RESPONSE**:  Denied.

### Midland Credit Management

12.    Defendant MCM is a Kansas corporation with its principal place of business at 8875 Aero Drive, Suite 200, San Diego, CA 92123.  MCM transacts business in Illinois.  Its registered agent and office are Illinois Corporation Service Co., 801 Adlai Stevenson Drive, Springfield, IL 62703.

3

**RESPONSE: Defendants admit that MCM is a Kansas corporation with its principal offices in San Diego, California. MCM denies that it does business in Illinois, except and exclusively through interstate commerce. Further answering, Defendants deny that MCM has an office in Illinois.**

13. Defendant MCM is a collection agency and collects the charged-off debts held in the names of NCC and other subsidiaries of Encore (described below).

**RESPONSE: Defendants admit that MCM may be considered a debt collector under the FDCPA, for some purposes. Defendants deny that MCM is a "collection agency." Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation that MCM acted as a debt collector with respect to Plaintiff, because they are without knowledge or information sufficient to form a belief as to the purpose of Plaintiff's debts.**

14. Defendant MCM is a "debt collector" as defined in the FDCPA.

**RESPONSE: Defendants admit that MCM may be considered a debt collector under the FDCPA, for some purposes. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation that MCM acted as a debt collector with respect to Plaintiff, because they are without knowledge or information sufficient to form a belief as to the purpose of Plaintiff's debts.**

### Encore

15. MCM and NCC are under common ownership. All are subsidiaries of Encore, a publicly traded Delaware corporation, with offices at 8875 Aero Drive, Suite 200, San Diego, CA 92123.

**RESPONSE: Defendants admit the allegations in this paragraph.**

16. Encore describes itself as "a leading accounts receivable management firm" and a "purchaser and manager of charged-off consumer receivables portfolios." (Form 8-K filed by Encore with the SEC on March 3, 2005).

**RESPONSE: Defendants admit solely that Plaintiff purports to cite to a portion of a Form 8-K filed by Encore with the SEC. Defendants deny the allegations in this paragraph to the extent that they are contrary to or inconsistent with the statements in the Encore 8-K.**

17.     One of the principal types of debts collected by Encore and its subsidiaries is auto lease and contract receivables. According to Encore's Form 10-K for the period ending December 31, 2007 (original p. 3), "The receivable portfolios we purchase consists primarily of unsecured, charged-off domestic consumer credit card, auto loan deficiency and telecom receivables purchased from national financial institutions, major retail credit corporations, telecom companies and resellers of such portfolios." Similarly, page 56 of the same document states:  "The receivable portfolios the Company purchases consist primarily of unsecured, charged-off domestic consumer credit card, auto deficiency, and telecom receivables purchased from national financial institutions, major retail credit corporations, telecom companies and resellers of such portfolios. Acquisitions of receivable portfolios are financed by operations and by borrowings from third parties. See Note 8 for further discussion of the Company's debt.

**RESPONSE: Defendants deny the allegations in this Paragraph to the extent that they are contrary to or inconsistent with the statements in the 10-K Encore filed in 2008 for the year ending December 31, 2007.**

18.     Encore intentionally and regularly obtains auto receivables that went into default more than 4 years previously and has its subsidiaries collect them. The Encore 10-K for the period ending December 31, 2006 stated "The impairment on the 2005 pool group was the result of lower than expected collections related to automotive deficiencies that were in excess of 80 months from charge off at the time of purchase…." (Original p. 28).

**RESPONSE: Defendants deny the allegations in this Paragraph to the extent that they are contrary to or inconsistent with the statements in the 10-K Encore filed in 2007 for the year ending December 31, 2006.**

19.     On March 10, 2005, Encore stated to public investors that it is a "50 year old purchaser and manager of consumer receivables portfolios." (Form 8-K filed by Encore with the SEC on March 10, 2005).

**RESPONSE: Defendants admit solely that Plaintiff purports to cite to a portion of a Form 8-K filed by Encore with the SEC. Defendants deny the allegations in this paragraph to the extent that they are contrary to or inconsistent with the statements in the Encore 8-K**

20.     Encore "acquires its receivable portfolios at deep discounts from their face values using its proprietary valuation process that is based on the consumer attributes of the underlying accounts." (Form 10-K filed by Encore with the SEC for the year ending December 31, 2006, original p. E). By "deep discount" is meant 3.0 to 3.36% of face value. (*Id.,* original p. 28).

**RESPONSE:  Defendants deny the allegations in this Paragraph to the extent that they are contrary to or inconsistent with the statements in the 10-K Encore filed in 2007 for the year ending December 31, 2006.**

21.     Encore states that it is responsible for developing collection strategies. Thus, on March 3, 2005, Encore stated to public investors that:

> Our fourth quarter performance capped a very strong year for Encore, as we generated record levels of collections, revenues, and earnings per share….We were able to achieve this strong growth despite scaling back on our purchasing of new portfolios throughout much of 2004 in response to less attractive pricing in the marketplace. Total purchases during 2004 were $103.4 million compared to $89.8 million in 2003. We continue to effectively develop alternative collection channels, such as legal and agency outsourcing, which increase our ability to penetrate our portfolios further….

The statement was made by Carl C. Gregory, III, the Vice Chairman and CEO of Encore Capital Group, Inc. (Form 8-K filed by Encore with the SEC on March 3, 2005).

**RESPONSE:  Defendants admit solely that Plaintiff purports to cite to a portion of a Form 8-K filed by Encore with the SEC. Defendants deny the allegations in this paragraph to the extent that they are contrary to or inconsistent with the statements in the Encore 8-K.**

22.     The collection strategies Encore devises include collection strategies for auto deficiencies. On information and belief, Encore has or had a "Vice President of Auto Deficiency Solutions" in charge of this task.

**RESPONSE:  Denied.**

23.     Encore is also responsible for raising money to purchase the charged-off debts.

**RESPONSE:  Denied as stated. Encore admits only that it does obtain funds, some of which are ultimately used to purchase charged-off debts.**

24.     Encore has various subsidiaries, such as NCC [sic], take title to the debts it purchases.

6

**RESPONSE: Denied as stated. Defendants admit only that NCC takes title to the debt that NCC purchases.**

    25.    On March 3, 2005, Encore CEO Gregory stated in an earnings conference call:

It's notable that we achieved this strong growth despite scaling back on our purchases of new portfolios for the better part of 2004, because of a less attractive pricing environment. As we have mentioned many times, one of our competitive advantages is our varied business model that makes use of several different collection channels. During the fourth quarter we continue to see increased production out of our legal channel and our contingent agency outsourcing channel, which was developed earlier in 2004. For the full year, our collections through alternative channels, with the exception of the sales channel, more than doubled.

Turning to the purchasing market, our purchases for the first three quarters of the year were relatively modest, because of what we deemed to be a lack of opportunities that met our high standards. The market continues to be highly competitive, and it's looking like it could remain that way for quite a while. Accordingly, we have adjusted our strategy to reflect the current environment. We determined that we should not bypass profitable opportunities simply because they could not generate the high level of returns we have typically demanded, there are sufficient opportunities to purchase portfolios that can be nicely profitable for the Company. And in the current environment, it's in our best interest to acquire these portfolios rather than waiting for prices to come down.

With that being said, we invested $46.1 million in new portfolios in the fourth quarter, at an average purchase price of 3.86 percent of face value. Almost all of these purchases were credit card portfolios and that's where we found the most attractive opportunities in the fourth quarter. These purchases were made with our former credit facility that expired at the end of the year. We were able to modify the terms of that credit facility that expired at the end of the year. We were able to modify the terms of that credit facility during the fourth quarter, to put a ceiling on the total interest that we will have to pay on these portfolios. The lower interest expense associated with these portfolios will help offset the higher prices, and the resulting lower collection multiples and enable these portfolios to still generate nice profits for the Company.

**RESPONSE: Defendants admit that the Plaintiff purports to cite to certain statements attributed to Encore CEO Gregory on a March 3, 2005 earnings conference call. Defendants deny that the allegations contained in paragraph 25 represent a true and correct version of the statements made by Encore CEO Gregory.**

    26.    On August 3, 2004, Encore CEO Gregory stated in another earnings call:

>We believe our business model is especially well-suited to this changing environment. Specifically, our business model emphasizes customer-level rather than portfolio-level analytics, innovative and flexible collection processes and conservative accounting.
>
>The keystone to everything we do is customer-level analytics – understanding the individual customer and his changing ability to pay. Prior to purchase and throughout our ownership, we analyze the individual customer's ability and willingness to pay. We are always asking the same question – can this particular customer pay us all or some of what he owes now? By focusing on the customer and information about him, we are able to move comfortably across various asset types as well as the portfolio ages or time since charge-off. In this process, a score is generated for every single account we own and the score is refreshed quarterly to ensure that it maintains its accuracy.
>
>The second major aspect of our business model is our use of innovative collection strategies that are driven by the underlying collectability score of each customer. In other words, to fully benefit from the new information we are generating about the individual customers, we have to be able to apply different collection strategies as appropriate, or at least be able to apply the traditional approaches in new ways that will be more effective.
>
>We now have eight unique revenue channels that each contribute more than $1 million per month in collections, including direct mail, balance transfer, external legal, and our recently developed agency outsourcing strategy.

**RESPONSE:** **Defendants admit that Plaintiff purports to cite to certain statements attributed to Encore CEO Gregory on an August 3, 2004 conference call. Defendants deny that the allegations contained in paragraph 26 represent a true and correct version of the statements made by Encore CEO Gregory.**

27. Encore's involvement in the collection process is such as to make it a "debt collector" as defined in the FDCPA.

**RESPONSE:** **Denied.**

28. All of the defendants herein are under common control as well as ownership, with common or overlapping officers and directors.

**RESPONSE:** **Denied as stated. Encore is the parent and a shareholder of NCC and MCM. The Defendants do not all have the identical composition of officers and directors.**

29. Plaintiff is an individual who resides in the Northern District of Illinois.

**RESPONSE: Defendants lack information or knowledge sufficient to form a belief as to the truth of this allegation.**

## FACTS

30. On or about July 17, 2007, a lawsuit was filed against plaintiff James Blount in the Circuit Court of DuPage County to collect a purported auto retail installment contract debt incurred for personal, family or household purposes. The suit was filed in the name of Midland Funding NCC Corp. See Exhibit A. On information and belief, defendant Midland Credit Management, Inc., actually made the decision to file suit.

**RESPONSE: Defendants admit only that Plaintiff purports to attach a portion of a complaint filed by NCC in the Circuit Court of DuPage County. The complete complaint speaks for itself. Defendants deny the remaining allegations in paragraph 30.**

31. The charges for which recovery was sought in the lawsuit were more than 4 years old at the time of suit.

**RESPONSE: Denied.**

32. The complaint alleged that the debt was in default and the automobile had been repossessed by the original creditor, Household Automotive Financial, no later than August 3, 2001.

**RESPONSE: Defendants admit only that Plaintiff purports to interpret a portion of a complaint filed by NCC in the Circuit Court of DuPage County, but deny that Plaintiff's interpretation is correct. The complete complaint speaks for itself. Defendants deny the remaining allegations in paragraph 32.**

33. The complaint filed against Mr. Blount therefore, on its face, sought to enforce a supposed debt that had been in default more than four years.

**RESPONSE: The allegations of paragraph 33 set forth conclusions of law to which no response is required. To the extent that a response is deemed required, Defendants deny the allegations of paragraph 33.**

34. The statute of limitations applicable to the collection of auto retail installment contract and lease debts is four years under sections 2-725 and 2A-506 of the Uniform Commercial Code. *Citizens National Bank of Decator v. Farmer,* 77 Ill. App. 3d 56; 395 N.E.2d

9

1121 (4th Dist. 1979); *Fallimento C.Op.M.A. v. Fischer Crane Co.,* 995 F.2d 789 (7th Cir. 1993); *Associates Discount Corp. v. Palmer*, 47 N.J. 183, 219 A.2d 858 (1966); *Massey-Ferguson Credit Corp. v. Casualong*, 62 Cal. App. 3d 1024, 133 Cal. Rptr. 497 (1976); *jack [sic] Heskett Lincoln-Mercury v. Metcalf,* 158 Cal. App. 3d 38; 204 Cal. Rptr. 355 (1984); *Worrell v. Farmers Bank of Delaware*, 430 A.2d 469 (Del. 1981); *Barnes v. Community Trust Bank*, 121 S.W.3d 520 (Ky. App. 2003); *First of Am. Bank v. Thompson*, 217 Mich. App. 581; 552 N.W.2d 516 (1996).

**RESPONSE: The allegations of paragraph 34 set forth conclusions of law to which no response is required. To the extent that a response is deemed required, Defendants state that the UCC and the cases cited speak for themselves.**

35. Section 2-725 of the UCC, applicable to retail installment contracts provides: "An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued…." The Illinois citation is 810 ILCS 5/2-725.

**RESPONSE: The allegations of paragraph 35 set forth conclusions of law to which no response is required. To the extent that a response is deemed required, Defendants state that the UCC speaks for itself.**

36. Section 2A-506 of the UCC, applicable to leases, provides: "An action for default under a lease contract, including breach of warranty or indemnity, must be commenced within 4 years after the cause of action accrued…." The Illinois citation is 810 ILCS 5/2A-506.

**RESPONSE: The allegations of paragraph 36 set forth conclusions of law to which no response is required. To the extent that a response is deemed required, Defendants state that the UCC speaks for itself.**

37. Hereinafter, the 6 states of: Illinois, New Jersey, California, Delaware, Kentucky and Michigan are referred to as the "applicable jurisdictions."

**RESPONSE: Defendants admit only that Plaintiff defines "applicable jurisdictions" as the 6 states of: Illinois, New Jersey, California, Delaware, Kentucky and Michigan.**

38. "[T]he assignee***takes the assignor's interest subject to all legal and equitable defenses existing at the time of the assignment." *John O. Schofield, Inc. v. Nikkel,* 314 Ill. App. 3d 771, 783, 731 N.E.2d 915 (5th Dist. 2000). "[T]he assignee stands in the shoes of the assignor and, in so doing, is subject to any defense that might be urged against the assignor." *Klehm v. Grecian Chalet, Ltd.*, 164 Ill. App. 3d 610, 617, 518 N.E.2d 187 (1st Dist. 1987). This includes the statute of limitations. *Coryell v. Klehm*, 157 ill. 462; 51 N.E. 864, 868-69 (1895).

**RESPONSE: The allegations of paragraph 38 set forth conclusions of law to which no response is required. To the extent that a response is deemed required, Defendants state that the cases cited speak for themselves.**

39. Defendants regularly file and threaten to file suit on auto retail installment contract and lease debts.

**RESPONSE: Denied.**

40. Defendants regularly file and threaten to file and cause the filing of suit on auto retail installment contract and lease debts in the applicable jurisdictions that are more than four years old at the time of the filing or threat.

**RESPONSE: Denied.**

41. Defendants, as regular collectors of auto retail installment contract and lease debts, knew or should have known that the statute of limitations applicable to such debts is four years.

**RESPONSE: The allegations of paragraph 41 set forth conclusions of law as to which no response is required. To the extent that a response is deemed required, Defendants deny the allegations in paragraph 41 as untrue.**

42. Defendants engage in a pattern and practice of filing suit on time-barred debts.

**RESPONSE: Denied.**

### COUNT I – FDCPA – FILING SUIT ON TIME-BARRED DEBTS

43. Plaintiff incorporates paragraphs 1-44 [sic].

**RESPONSE: Defendants incorporate their responses to Paragraphs 1-42.**

44. This claim is against all defendants.

**RESPONSE: Defendants admit that Plaintiff purports to bring this claim against all Defendants.**

45. The filing and prosecution of time-barred lawsuits is both a deceptive collection practice, in violation of 15 U.S.C. §§ 1692e, 1962e(2), 1692e(5), and 1692e(10), and an unfair collection practice, in violation of 15 U.S.C. § 1692f.

11

**RESPONSE**:  The allegations of paragraph 45 set forth conclusions of law to which no response is required.  To the extent that a response is deemed required, Defendants admit only that Plaintiff purports to state interpretations of the FDCPA Sections 1692e and 1692f, which speak for themselves.  Defendants deny any implication that Defendants violated the FDCPA.

    46.    Section 1692e provides:

> § 1692e.    False or misleading representations [Section 807 of P.L.]
>
> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .
>
> (2)    The false representation of –
>
>     (A)    the character, amount, or legal status of any debt; . . .
>
> (5)    The threat to take any action that cannot legally be taken or that is not intended to be taken. . . .

**RESPONSE**:  The allegations of paragraph 46 set forth conclusions of law to which no response is required.  To the extent that a response is deemed required, Defendants admit only that Plaintiff purports to state portions of the FDCPA, which speaks for itself.  Defendants deny any implication that Defendants violated the FDCPA.

    47.    Section 1692f provides:

> § 1692f.    Unfair practices [Section 808 of P.L.]
>
> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. . . .

**RESPONSE**:  The allegations of paragraph 47 set forth conclusions of law to which no response is required.  To the extent that a response is deemed required, Defendants admit only that Plaintiff purports to state portions of the FDCPA, which speaks for itself.  Defendants deny any implication that Defendants violated the FDCPA.

## CLASS ALLEGATIONS

48. Plaintiff brings this claim against the defendants on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3). The class consists of (a) all individuals with addresses in one of the applicable jurisdictions (b) against whom defendants filed or caused to be filed lawsuits (c) to collect auto retail installment contract or lease debts (d) more than four years after the later of default, repossession or charge off, (e) which lawsuit was pending at any time during a period beginning one year prior to the filing of this action and ending 20 days after the filing of this action.

**RESPONSE:  Defendants deny that a class exists or that one should be certified, and accordingly, deny the allegations in Paragraph 48.**

49. The class is so numerous that joinder of all members is not practicable.

**RESPONSE:  Defendants deny that a class exists or that one should be certified, and accordingly, deny the allegations in Paragraph 49.**

50. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether defendant engages in a practice of filing time-barred complaints and whether such practice violates the FDCPA.

**RESPONSE:  Defendants deny that a class exists or that one should be certified, and accordingly, deny the allegations in Paragraph 50.**

51. Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

**RESPONSE:  Defendants deny that a class exists or that one should be certified, and accordingly, deny the allegations in Paragraph 51.**

52. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and FDCPA litigation.

**RESPONSE:  Defendants deny that a class exists or that one should be certified, and accordingly, deny the allegations in Paragraph 52.**

53. A class action is superior for the fair and efficient adjudication of this matter, in that:

    a. Individual actions are not economically feasible.

      b.      Members of the class are likely to be unaware of their rights;

      c.      Congress intended class actions to be the principal enforcement mechanism under the FDCPA.

**RESPONSE:  Defendants deny that a class exists or that one should be certified, and accordingly, deny the allegations in Paragraph 53.**

WHEREFORE, the Court should enter judgment in favor of plaintiff and the class and against defendants for:

      (1)      Statutory damages;

      (2)      Actual damages;

      (3)      Attorneys' fees, litigation expenses and costs of suit;

      (4)      Such other and further relief as the Court deems proper.

**RESPONSE:  Denied.**

WHEREFORE, Defendants respectfully request judgment in their favor and against Plaintiff on all claims asserted by Plaintiff and for such other relief as the Court deems just and proper.

## AFFIRMATIVE DEFENSES

Further answering the Complaint, and as additional defenses thereto, Defendants incorporate by reference the foregoing answers and affirmative defenses as though fully set forth herein, without assuming the burden of proof where such burden is otherwise on Plaintiff as a matter of applicable substantive procedural law, and further allege as follows:

### FIRST DEFENSE

1.      MCM is not liable for a violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et. seq.*, ("FDCPA") because any violation, which MCM denies occurred, was not intentional and would have resulted from a *bona fide* error notwithstanding the maintenance of procedures reasonably adapted to avoid such error pursuant to 15 U.S.C. § 1692k(c).

**SECOND DEFENSE**

2.   Plaintiff fails to state a cause of action under the FDCPA, because Defendants NCC and Encore did not engage in any debt collection activities relating to the allegations in Plaintiff's Complaint and are not debt collectors as defined by the FDCPA.

**THIRD DEFENSE**

3.   Assuming Defendants NCC and Encore's alleged acts or omissions violated the FDCPA and said Defendants are found to be debt collectors as defined by the FDCPA, all of which said Defendants deny, any violation of the FDCPA was not intentional and would have resulted from a *bona fide* error notwithstanding the maintenance of procedures reasonably adapted to avoid such error pursuant to 15 U.S.C. § 1692k(c).

WHEREFORE, Defendants respectfully request judgment in their favor and against Plaintiff on all claims asserted by Plaintiff and for such other relief as the Court deems just and proper.

Dated:  June 24, 2008                                 Respectfully submitted,

**MIDLAND CREDIT MANAGEMENT, INC.;
MRC RECEIVABLES CORPORATION,
MIDLAND FUNDING NCC -2, AND ENCORE
CAPITAL GROUP, INC.**

By: s/ Theodore W. Seitz
  Richard E. Gottlieb (rgottlieb@dykema.com)
  Theodore W. Seitz (tseitz@dykema.com)
  Kathleen E. Surowiec (ksurowiec@dykema.com)
  Dykema Gossett, PLLC
  10 South Wacker Drive, Suite 2300
  Chicago, Illinois 60606
  Phone: 312-876-1700
  Fax:    312-627-2302

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 24, 2008, I electronically filed the foregoing Defendants Midland Credit Management, Inc., Midland Funding NCC-2 Corporation, and Encore Capital Group, Inc.'s Answer and Affirmative Defenses To Plaintiff's Complaint with the Clerk of the Court using the ECF system, which sent notification to the following:

>Daniel A. Edelman (courtecl@edcombs.com)
>Cathleen M. Combs (ccombs@edcombs.com)
>James O. Latturner (jlatturner@edcombs.com)
>Cassandra P. Miller (cmiller@edcombs.com)

>s/ Irina V. Frye

LAN01\189938.1
ID\TWS